JOHN THALLON & CO., INC., Appellant, *v.* SNOWCREST PACKING CORP., Respondent.

First Department, December 21, 1954.

*Myron Kommel* of counsel (*Kommel & Rogers,* attorneys), for appellant.

*John R. O'Reilly* for respondent.

COHN, J. The appeal is from a judgment in favor of defendant after trial without a jury. The action was instituted by a buyer against a seller for damages for failure to deliver merchandise.

On July 30, 1953, plaintiff, through a broker named E. J. Basso, placed with defendant an order for 1,000 tins of pure refined lard at $14.15 per hundredweight. Plaintiff had resold the lard to Puerto Rican customers for $15.50 per hundredweight. The written confirmation provided that the lard was to contain hardening chips, and was to be delivered at a Brooklyn pier on August 5, 1953, to be loaded upon a steamship. On August 3, 1953, plaintiff placed with the defendant a second order, through the same broker, for 200 additional tins of pure refined lard with hardening chips, delivery to be made the following week. These 200 tins had also been resold to one of plaintiff's Puerto Rican customers for $16.25 per hundredweight. Defendant delivered 1,000 tins at the dock on the morning of August 5, 1953, but the shipment was rejected by plaintiff because upon inspection it was found to be liquid lard. The issues with respect to the first cause of action, which is based upon this order are (1) whether defendant upon being advised that the merchandise was not satisfactory had unconditionally agreed to replace it; and (2) if such an agreement had not been made, whether the shipment complied with the terms of the contract. The second order for 200 tins was never delivered, defendant taking the position that since plaintiff had unjustifiably rejected the first order, it was under no obligation to make delivery under the second order. For this breach plaintiff seeks damages in the second cause of action.

The trial court decided that the 1,000 tins shipped complied substantially with the specifications under which they were sold, and also ruled that plaintiff's refusal to accept the 1,000 tins rendered unnecessary any delivery of the 200 tins. Upon the evidence, we are unable to agree with the determination of the learned trial Justice.

In our view there was no justification for a cancellation by defendant of the second order. This was a separate and independent contract. It was defendant's duty to offer a tender of the merchandise called for by this agreement, and in failing to do so, it became liable to plaintiff for its breach. The damages claimed and established under the second cause of action amount to $250, which sum represents the difference between the contract price and the market price as of the time and place of delivery together with an allowance for special damages shown.

As to the first cause of action, it appears from the evidence adduced by plaintiff that after the merchandise had been unloaded on the dock on the morning of August 5th, plaintiff

sent its truck driver to obtain a sample. The driver testified that he opened one can and found the lard was in liquid form. He took a one quart jar of the lard which he delivered to his employer. He also stated that he shook thirty-five or forty of the cans and found that each contained liquid matter. Plaintiff thereupon notified the broker, Basso, that the merchandise delivered was not in accordance with the contract; that it was in liquid form and did not contain hardening chips; and that it, therefore, was unable to accept the shipment.

Basso, called as a witness for plaintiff, testified that on August 5th he was informed by plaintiff of the liquid condition of the lard at the dock; that on August 6th he saw the sample drawn by plaintiff's truck driver and found that the " solids in the lard were separated and the top of the lard was all liquid "; that he immediately contacted defendant's president, Mr. Morris Hark, by long-distance telephone and apprised him of the fact that plaintiff had found the lard to be liquid and not in accordance with contract; and that defendant promised to replace the order the following week. It is to be noted that on this same day defendant had a truckman pick up the merchandise at the pier for its account. Basso's testimony that defendant had made an unconditional promise to replace the shipment was buttressed by the testimony of Sydney M. Washer, president of plaintiff company, who had a long-distance talk with Morris Hark on August 10th. It was defendant's contention that no unconditional agreement to replace had been made; that when Basso telephoned to apprise it of the rejection of the lard, he was told that if the lard upon analysis was found not to comply with the contract, the shipment would be replaced. However, defendant's president with whom Basso had the conversation did not testify as a witness. The only evidence offered in support of defendant's claim was tendered by an employee of defendant, who was a brother of defendant's president. This witness claimed to have " listened in " on the conversation over the telephone between Basso and defendant's president. He testified that as he heard it, the understanding was to replace the shipment if the lard was found not to be in accordance with the contract.

In its opinion, the trial court stated: " Upon plaintiff notifying defendant of its rejection it agreed to take back the merchandise and redeliver it for the following week for a boat then sailing." Whether this statement was intended as a finding of fact or merely as a recital of plaintiff's claim is not clear. If

upon another trial it should be determined that there was in fact no binding agreement made between the parties that the lard was to be replaced by another shipment to be made the following week, then the court would be called upon to consider whether the proof sufficiently establishes that the original merchandise delivered conformed to the contract. Upon the trial four witnesses testified for the plaintiff that the lard delivered on August 5th was liquid. Nevertheless, defendant when apprised of the condition of the merchandise according to witnesses for the plaintiff, agreed upon a replacement. Defendant exercised full dominion over the goods, reselling a part the same day. The market price of refined lard was rising between August 5th and August 12th, as plaintiff contends, and there was no reason to reject the shipment except that it did not conform to the contract. There is documentary evidence in the case which establishes that plaintiff had confirmed orders from customers in Puerto Rico, who were anxious to obtain delivery of the merchandise. In fact, plaintiff had placed the orders for the lard to cover prior sales made to such customers. It would seem that if the lard had conformed to the contract, plaintiff would have been willing to accept it and pay for it and ship it at a profit to its customers in Puerto Rico.

Defendant through expert testimony offered to show that the lard which came from the rejected shipment was as ordered, namely: pure refined lard with hardening chips, and that the liquidity of the contents of the various cans in no way affected the merchantability of the product. However, the testimony of defendant's witnesses failed to establish with reasonable certainty that the lard which the experts tested had come from the rejected shipment. In the circumstances, we think that upon another trial there should be a direct finding upon the question as to whether defendant unconditionally agreed to take back the merchandise delivered on August 5th, and to replace it the following week. If the court should so find, then defendant's failure to replace would constitute a breach of its agreement and plaintiff would be entitled to recover whatever damages it might be able to establish with respect to its first cause of action. If it should be found that no agreement to replace had been made, then the court should consider the question as to whether the merchandise shipped on August 5th conformed with the contract between the parties. If it did not, plaintiff would still be entitled to recover. If it did, and there was no unconditional agreement to replace, the defendant would be entitled to judgment as to that cause of action.

The judgment should be reversed, and the causes of action severed; a new trial should be ordered as to the first cause of action and as to the second cause of action judgment should be directed in favor of plaintiff in the sum of $250. Settle order accordingly.

PECK, P. J., DORE and BASTOW, JJ., concur.

Judgment unanimously reversed and the causes of action severed; a new trial is ordered as to the first cause of action and as to the second cause of action judgment is directed in favor of the plaintiff in the sum of $250. Settle order on notice.